[Crim. No. 796.   Fourth Dist.   Feb. 16, 1954.]

THE PEOPLE, Respondent, v. NOAH PAUL WILLIAMS et al., Appellants.

Alpha L. Montgomery, under appointment by the District Court of Appeal, Clifford L. Duke, Jr., Myron Kaminar and Augustine, Bryans, Ragen & O'Connor for Appellants.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

BARNARD, P. J.—These defendants were jointly charged with robbery. In the first count it was charged that on April 9, 1953, they took $90 from Jesus Carrillo by force and fear. The second count charged them with taking $50.50 from Demetrio Avina by force and fear. As to each count it was charged that they were armed with a deadly weapon, a .22 rifle and a 20-gauge shotgun. A jury found each defendant guilty of first degree robbery on each count, and further found that two of them had been armed with a deadly weapon. A motion for a new trial was denied and all five defendants have appealed from that order and from the judgment.

The five defendants were represented by four attorneys at the trial, and the one who represented the defendant Leon was appointed by this court to represent him on this appeal. While some of the appellants raise points which are not raised by others, it will be unnecessary to differentiate between them in this regard.

It appears from the evidence that Carrillo and Avina, with a number of other Mexicans, were employed on a ranch in the Borrego Valley. On April 8, 1953, all of the appellants except Leon talked of going to Borrego Valley to see if they could pick up some "wetbacks." On April 9, they started out in a car, having a .22 rifle and a 20-gauge shotgun, and on the way they picked up Leon. About 7 p. m. on that day, they drove to a certain point near this ranch where Kretlow, Krom and Villareal got out. Krom had the .22 rifle and Villareal the shotgun. Williams and Leon then drove to the ranch where they picked up Carrillo and five other Mexican aliens, promising to take them to Los Angeles and collecting $10 from each of them for the trip. They then drove to the point where Kretlow, Krom and Villareal were waiting, and stopped the car. The defendants then took such money as they had left from the aliens and told them to run, firing a shot or shots for the purpose of frightening them and holding them together. They then drove to another point near the ranch where Krom, Kretlow and Villareal again got out of the car. Williams and Leon then drove to the ranch, picked up Avina and four other aliens and returned to the point where the other three were waiting. They then went through the same procedure as with the first group, robbing the aliens, firing a shot, and telling them to run.

On April 10, a deputy sheriff went to the location pointed out by Carrillo as the scene of the first robbery and there found a .22 caliber cartridge. Later, the officers found a .22 rifle which Krom admitted was the one he had used on the night of the robberies. A ballistics expert compared six cartridges fired from this gun with the one found by the officers, and testified that all seven were fired from the same gun. A jacket with peculiar markings, testified to as having been worn by one of the robbers, was found in the possession of Williams and admitted by him to be his. Shortly after the robberies an officer, Isbell, talked to all five of the appellants. Leon denied knowing anything about the robberies. The other four told in detail how the robberies were planned and executed, their statements corresponding fully with the statements made by the victims with respect to how the robberies were committed. None of the appellants took the witness stand, except on *voir dire* on the one issue as to whether or not their statements had been given voluntarily.

Carrillo and two of the other victims testified at the trial but Avina was not present, and the transcript of his testimony at the preliminary hearing was read into evidence. Appellants' first contention is that it was error to admit the testimony of this absent witness since no sufficient showing was made of due diligence to secure the presence of Avina. In this connection it appears that at the time of the preliminary hearing the district attorney had stated that he had every reason to believe that all of these witnesses would be available for the trial, since they had placed a "hold" on the immigration service and arrangements were made to keep them in this country for the trial; that on May 27, the case was set for trial on July 8; that on May 27, all the victims were under a "hold" of the immigration department and had been placed at various farms in the county to remain pending trial; and that those special arrangements were made for the purpose of keeping them here for trial. ■ It was stipulated that a deputy sheriff, if called, would testify that he received a subpoena on June 20 and went to the ranch of a Mr. Nichols where Avina was employed; that Nichols told him that on June 15, Avina had received a telegram from Mexico City saying that his mother was dying, that arrangements were made to fly Avina from Tijuana on June 16, that Avina was presently in Mexico City, that Avina said he would probably be back in time for the trial and would try to do so, and that he had not yet arrived. The showing of diligence was sufficient under the circumstances, and no abuse of discretion appears in this connection (*People* v. *Cavazos,* 25 Cal.2d 198 [153 P.2d 177] ; *People* v. *Dunn,* 29 Cal.2d 654 [177 P.2d 553].) Moreover, no prejudice appears, as the record shows that at the preliminary hearing Avina was cross-examined separately by three attorneys.

■ Some of the appellants further contend that the court erred in admitting into evidence the testimony of the officer Isbell, as to the admissions or confessions made by four of the appellants, since it was not sufficiently shown that these admissions were voluntarily made; that the direct testimony of the appellants showing that promises of reward and immunity were made were not denied; and that the only evidence to the contrary was the conclusions and opinions of the officer. Isbell first testified, with respect to his talk with the individual appellants, that no threats were made and that

no promises or grants of immunity were made by him, or by anyone else in his presence. In several of the instances counsel put his client on the stand, on *voir dire,* and the client testified to the effect that Isbell had said that if the individual would cooperate with the police it would go much easier with him; that by cooperating with the police it would be much better for him and go much easier with respect to probation; and that because of these promises he answered the questions asked but otherwise would not have made any statements as to the robbery. Thereafter, Isbell testified in detail as to the respective conversations, telling what was said, and that this was all of the conversation. In effect, Isbell thus denied the statements made by the individual appellants, and the evidence was sufficient to support the court's ruling in this regard. The evidence, while conflicting, supports the judge's determination on the initial question as to whether the confessions were admissible and the jurors were instructed that it was for them to determine whether the confessions were made and whether they were voluntary, and that they must disregard them unless it was found that they were voluntarily made. (*People* v. *Logan,* 41 Cal.2d 279 [260 P.2d 20].)

In connection with these confessions several other contentions are made. One appellant argues that the court erred in not permitting his counsel to lay a foundation for, and to examine, the notes which Isbell said he had made while taking the confessions of the appellants. Isbell had admitted that in one instance he had been confused and had said that a certain statement was made by one of the appellants when it was actually made by another. Counsel tried to bring in these notes which had not been used by Isbell in his testimony, and an objection was sustained. Counsel said he would like to make an offer of proof and the judge told him he could make this offer in the absence of the jury, and he would then permit counsel to reopen if the offer of proof appeared to be material. It does not appear that any such offer of proof was ever made. Not only was the offer of proof not followed through but no error appears since the witness had not used these notes on the stand. (*People* v. *Gallardo,* 41 Cal.2d 57 [257 P.2d 29].) This same appellant also urges that the court erred in excluding any reference to the penalty as being immaterial. While this appellant was being examined on *voir dire,* with respect to the voluntariness of the confession, the court insisted that no mention of what had been said regarding the penalty be brought out unless it was

contended that the penalty stated by the officer was greater than it would actually be. ■ It is argued that this was error under the rule that where a part of a conversation is given in evidence the whole of it may be brought out by the other side. This rule is subject to the qualification that the portion of the conversation which is not relevant to the matter in question may be excluded. (*People* v. *Hymer,* 118 Cal. App.2d 28 [257 P.2d 63].) Ordinarily, the subject of penalty is not the jury's concern and no prejudice appears. Another appellant contends that the district attorney was guilty of prejudicial misconduct in asking him one question. ■ This appellant took the stand on *voir dire* for the purpose of showing that his confession was not free and voluntary. On cross-examination he was asked "Did they induce you to tell the truth about the case or induce you to lie about it?" An objection was overruled and he answered, "I would say I was induced to lie about it." It is argued that the question was improper as going to the merits of the action. This question had a direct bearing on the testimony given by this witness on his direct examination (*People* v. *Kynette,* 15 Cal.2d 731 [104 P.2d 794]), a part of which could well be considered as bearing on the merits of the action. In any event, no prejudice appears.

■ Error is assigned in the refusal to instruct the jury that if it found from the evidence that the officers had told one of the defendants that if he would cooperate and answer their questions things would be better for him and it would go easier on him, and if it found that this defendant relied on said promises and by reason thereof made a confession, that as a matter of law said confession was not free and voluntary and must be disregarded. This instruction was refused as covered. Neither error nor prejudice appears as the matter was fully and adequately covered in the written instructions given.

It is further contended that the court misdirected the jury and erred in giving several instructions, as hereafter noted. At the beginning of his instructions the court said: "Now, I want to make a preliminary statement before I give you the actual instructions in this case which are in writing. . . . What I say at this time as to this offense, and so forth, I want you consider that in the light of the instructions which I will give you and it is given to conform" therewith. The court then went on to make a long statement pointing out

that this was an unusual case, with five defendants and four attorneys, commenting on a number of matters which had been talked about during the trial, and making some general observations with respect to those matters. At the conclusion of that statement the judge went on to read the written instructions, which were very complete and which thoroughly covered every point of law involved in the case. The matters here complained of were all matters appearing in the preliminary statement thus made by the judge, and no complaint is made with respect to the real instructions which followed.

1. The first four relate to the finding of a knife. The appellants were charged with armed robbery in that they were armed with a rifle and shotgun. There was some evidence that they also had a knife but, while the rifle and shotgun were found and produced in evidence, no knife was found. In commenting on this phase of the case the judge stated that if the jury found that none of these articles were found this would be no reason for finding that the defendants were not armed "if you believe that the defendants were present at the time and place in question." He also stated that the mere fact that a weapon was not found does not make any difference "so long as there is proof that the weapon such as has been described was used"; that the mere fact that a knife was not produced would make no difference "if you feel from the evidence in this case that the knife was used"; and "If you find that there was a robbery perpetrated down there you will have to find whether or not these defendants, or any of them, were present at the time of the robbery. If they were, you will find them guilty, and if they weren't, you will find them not guilty." It is argued that the use of the words "think" and "feel" in some of these statements were improper because proof must be "beyond a reasonable doubt"; that the presence of a defendant at the scene of the crime would not be sufficient proof of guilt; and that erroneous statements of law thus clearly appear. ▮▮▮ Obviously, these were erroneous statements of law but they were made in connection with the discussion of certain incidents and in connection with other portions of the same general discussion showing that other things were necessary, the entire discussion being preceded by a statement that this was a preliminary discussion and was to be considered in the light of the specific instructions which were to be later given. While the matters complained of appear serious when taken out of the context, a reading of the entire preliminary

statement strongly indicates that the jury could not have been misled and must have understood that what was there being said was intended for a limited purpose, was confined to a part of one issue, and was to be modified and controlled by the regular instructions which followed.

2. In connection with the long discussion of another matter which the judge thought might mislead the jury the judge said: ''Your only purpose is to determine what the facts are in this case and if you think they are innocent under the evidence you will acquit them and if you think any or all of them are guilty, you will find them guilty.'' The complaint here made is that the word ''think'' was used rather than language to the effect that there must be a finding beyond a reasonable doubt. This was thoroughly covered in other instructions. Some suggestion is also made that a part of this portion of the statement would tend to indicate to the jury the judge's own view as to the matter of guilt or innocence. No such expression of opinion appears, and the judge fully instructed the jurors that they should disregard any expression he might have used which might seem to indicate any opinion held by him with respect to the facts, or which might have suggested that he was inclined to favor the claims of either party.

3. It is contended that the court trespassed on the province of the jury during this preliminary statement by saying that the appellants were not deceived by what Isbell told them about the punishment; that the only respect in which Isbell did not tell them the truth was what he told them with reference to probation, in that he made it worse than it was and that this was done through inadvertence; that it was up to them to determine whether Isbell had told the truth; and that if there was any material discrepancy between the testimony at the preliminary hearing and at the trial, the jury should, of course, consider it. It is argued that these remarks showed the court's approbation of the officer's testimony, and was an interference with the jury's exclusive province to determine the matter of Isbell's credibility. These statements were made during the course of a long explanation of why the court had endeavored to keep the matter of what the penalty would be out of the testimony given by the appellants while being examined on *voir dire*, with respect to whether or not the confessions were voluntary or not. The statements objected to could hardly be prejudicial when taken in connection with the context, and were

not necessarily improper under the circumstances. (*People* v. *Gosden*, 6 Cal.2d 14 [56 P.2d 211].) Moreover, the court instructed the jury that "with the questions of fact, the weight of the evidence and the credit you should give to any witness sworn in the case, the court has nothing to do. These are matters entirely within your province which you, as jurors, must determine for yourselves."

4. Complaint is also made of the part of the preliminary statement in which the court told the jury that whether the appellants were represented by counsel at the time they made the confessions or whether they were in custody at the time would not, of itself, make their confessions voluntary or involuntary; that the mere fact that an officer tells a defendant in a particular case that they have the goods on him would not make it involuntary; and that regardless of the fact that Mr. Isbell may have told the appellants that he had certain information would not make a confession involuntary if, in fact, he did not have that information. It is argued that the court thus emphasized the various items that would make a confession voluntary, but refused to instruct the jury as to items which would make the confession involuntary. The jury was instructed fully and at great length on that element. Among other things, the jury was instructed that "A confession is involuntary when it is obtained by any sort of violence or threats, or by any direct or implied promises of immunity or benefit, or by any improper influence which might induce in the mind of the defendant the belief or hope that he would gain or benefit or be better off by making a statement. . . ."

While some of the expressions used in this preliminary statement are erroneous, and while they should not have been used, it cannot reasonably be believed that the jury may have been misled thereby. The jury was clearly told in the beginning that this preliminary discussion was to be considered in the light of the specific instructions which followed, and it was then given full and definite instructions covering every element of the case, the correctness of which is not questioned. This is not a close case, the evidence of guilt was clear and convincing, and it would be unreasonable to believe that these errors could have affected the result. No miscarriage of justice appears, and the provisions of section 4½ of article VI of the Constitution are applicable.

Griffin, J., and Mussell, J., concurred.