[Crim. No. 5176.   Second Dist., Div. Three.   Nov. 12, 1954.]

THE PEOPLE, Respondent, v. BURL T. GRAY, Appellant.

Bentley M. Harris for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WOOD (Parker), J. — Defendant was charged, in two counts, with burglary. In a trial by jury he was found guilty, as to both counts, of burglary in the second degree. Defendant appeals from the judgment and from the order denying his motion for a new trial.

Appellant contends that the evidence is insufficient to support the verdict.

On the morning of June 18, 1953, Mr. Patton discovered that two boxes of tools had been removed from the garage at his residence at 2628 West 157th Street in Gardena. On the same morning, Mr. Barton discovered that all of his tools, a tool box and a jig saw had been removed from the garage at his residence at 2528 West 157th Street in Gardena. Mr. Patton testified that he had not been in his garage for three days prior to said June 18, but at that time the doors of the garage were closed; on the morning of June 18, one of the doors was partly open. Mr. Barton testified that he used his tools on the evening of June 17, 1953; when he left the garage the overhead door facing the alley was bolted from the inside, and he closed the door facing the yard but did not lock it; when he went to the garage about 7 a. m. on June 18, the overhead door was open. About 6 a. m. on June 18, 1953, a police officer saw an unoccupied Pontiac automobile, with its motor running, parked in the alley in front of the open overhead door of Mr. Barton's garage. There was no license plate on the front of the automobile and the rear license plate was covered with a rag. The tools, tool boxes and jig saw which had been taken from the garages of Mr. Patton and Mr. Barton were in the automobile. Also a pair of men's shoes was in the automobile. The automobile and the shoes belonged to defendant.

Another police officer, called as a witness by the People, testified that about 6 a. m. on said June 18 he went to the vicinity of the 2600 block on West 157th Street in answer to a call. When he arrived he observed the Pontiac automobile parked in the alley in the rear of 2528 West 157th Street. He saw defendant running along the side of the house which was next to 2528 West 157th Street. He (officer) said that he was a police officer, and he told the defendant to halt or he would shoot. Defendant then ran faster, "dove over" a gate into the front yard and disappeared. At the time he told defendant to halt, defendant was about 50 feet away and was looking directly at the officer. Defendant had a mustache and was wearing a maroon shirt, light brown pants, and blue socks but no shoes. About 20 minutes later, while he (officer) was cruising in the vicinity, he saw defendant between two houses in the 2500 block on West 155th Street. About 10 minutes after that the officer saw defendant as he (defendant) was coming out of the alley between 156th and 157th Streets. Defendant ran into the alley on the opposite side of the street and went over a fence. The officer saw defendant again about 6:45 a. m. on 156th Street at which time defendant disappeared between two houses. At one place the officer, who was in a police car, was approximately 35 feet behind defendant. The officer saw defendant that afternoon at the sheriff's office.

Another witness, called by the People, testified that on said June 18 he lived at 2707 West 155th Street in Gardena. About 7:10 a. m. on that day he saw defendant across the street from his residence. Defendant was on his hands and knees at the side of a hedge. Defendant looked at him, then ran across the street between the two houses west of his (witness') house and disappeared. At that time defendant had a mustache, was wearing a maroon shirt, but was not wearing shoes.

Another witness, called by the People, testified that on said June 18 she lived at 15332 Chanera Street in Gardena, which is three blocks from 157th Street, and in the neighborhood of the 2600 block. About 7:45 a. m. on that day, while she was in her kitchen, she saw defendant walking through her yard and at that time he was about 10 feet from her. He walked very slowly, opened the gate slowly, looked up and down the street and then ran across the street. He had no shoes on and he was dressed in a rust-colored shirt, brown trousers and blue socks. At that time he had a mustache.

· An investigating officer, called as a witness by the People, testified that he talked with defendant about 2:45 p. m. on said June 18, and at that time defendant had no mustache. Defendant told him that he did not know where Gardena Park was; on the morning of June 17, he and his wife had an argument and he went to his sister's home; that afternoon he went to a café, had several drinks, and stayed there until closing time; he then went to a restaurant nearby, had something to eat and went to his sister's home; he arrived there about 3 a. m. and his sister let him in; the next morning he got up about 7:30 a. m. and noticed that his car was not in front of his sister's home; he then called the police department and reported that his car was stolen. In a second conversation with defendant, in the presence of defendant's sister, he (officer) asked defendant if his sister let him in her house on the morning of the 18th, and the sister said that she did not let him in. Defendant also told him that he was a painter and carried a pair of shoes in his car, and when his feet became tired he put on the good shoes. The officer testified further that defendant's sister lived about 11 miles from the vicinity where the crimes were committed, and there was no direct streetcar or bus service between the two places.

An officer, called as a witness by defendant, testified that about 8:20 a. m. on said June 18 he received a call about a stolen automobile, and in response thereto he went to defendant's home. He arrived there about 8:30 a. m. and took a "stolen-car report" from defendant regarding the Pontiac automobile (involved herein). At that time defendant was wearing a blue and white "checkered" shirt, brown trousers and paint-speckled shoes, and he had a mustache.

Defendant testified that on June 17, 1953, from 1 p. m. until approximately 7 p. m., he was drinking in a bar. He then went to his home and, finding no one there, he went to his sister's home where he stayed until approximately 11 p. m. Then he returned to the bar where he remained until about midnight. Then he went to two bars and then he returned to the first bar where he continued drinking until 2 a. m. Then he went, with the bartender and another man, to a café across the street from the bar and had a cup of coffee, and then he drove to his sister's home. He thought that somebody let him in but he had a key and could have opened the door himself. The next morning a friend telephoned him about playing golf, and he told the friend to go back to bed—that it was still night. About 8 a. m., his

sister awakened him, and he discovered that his car was missing. He is a painter and he usually carries a pair of shoes in his car for the reason that while painting he splashes paint on the shoes he is wearing, and also after standing for 10 hours in the same pair of shoes his feet hurt, and he changes into a more comfortable pair. He had no mustache on "November [June]" 17 or 18, and at that time he wore light pants and black shoes. The license plate came off the front of his car while he was pushing another car. He did not put it back because he had no bolts. He did not cover the rear license place of his car with a rag—"Not intentionally."

Defendant's sister, called as a witness by defendant, testified that on the evening of June 17, 1953, defendant left her home about 11 p. m., and the next time she saw him was at 8 a. m. the following morning. At that time he was asleep on the couch in her living room and she awakened him.

Another witness, called by defendant, testified that he and defendant had played golf many times. He saw defendant in the club, where he (witness) works, about 1:30 a. m. on said June 18, and he asked defendant about playing golf. About 6:20 that morning he (witness) telephoned defendant and defendant told him to forget about golf.

Appellant argues that it would have been impossible for him to be where the crimes were committed at 7:45 a. m. and, 15 minutes thereafter, to be at his sister's home, 11 miles away. He refers to testimony of a witness that she saw him near 157th Street at 7:45 a. m., and to the testimony of his sister that he was sleeping in her home at 8 a. m. He also refers to testimony of his friend that he talked to appellant at 6:20 a. m. The jury was not required to accept the testimony of appellant's sister to the effect that appellant was in her home at 8 a. m. Three witnesses identified appellant as the man they saw in the vicinity where the crime was committed. As stated in *People* v. *McNeal,* 123 Cal. App.2d 222, at page 224 [266 P.2d 599], "The question of identification of the accused as the person who committed the crime was a question for the jury unless the evidence of identification was incredible as a matter of law." The three witnesses, above referred to herein, testified that when they saw appellant in the vicinity of 157th Street he had no shoes on and he had a mustache. Appellant's shoes were in the automobile, and the officer who investigated the stolen-car report testified that appellant had a mustache at 8:30 a. m.

on June 18. The evidence was sufficient to justify a finding that appellant was the person whom those witnesses saw near the scenes of the crimes.

Appellant asserts further that there was no testimony that anyone saw him enter the garages, and that therefore an essential element of the crimes of burglary was not proved. The evidence is uncontradicted that appellant was driving his automobile in the early hours of the morning of June 18; about 6 a. m. his automobile was parked in the alley before the open door of Mr. Barton's garage; the stolen articles were in his car; appellant's ignition key and his shoes were in the automobile. There was evidence that appellant fled when the officer ordered him to halt. The evidence amply supports the verdict.

The judgment and order are affirmed.

Shinn, P. J., and Vallée, J., concurred.