[Civ. No. 16682. First Dist., Div. One. Apr. 16, 1956.]

Estate of JOSEPH F. NUNES, Deceased. JOE E. NUNES,
Appellant, v. JOE E. NUNES, Respondent.

Foley & Foley, James W. Foley, Machado & Machado and John H. Machado for Appellant.

Rankin, Oneal, Luckhardt, Center & Hall, C. E. Luckhardt and Duncan Oneal for Respondent.

AGEE, J. pro tem.*—The will of decedent devised "unto Joe E. Nunes, a nephew of mine, a one-quarter interest in my ranch . . ." Both appellant and respondent fitted this description of the devisee. Appellant is the son of a half brother of the decedent. Respondent is a second cousin of the decedent, but was usually referred to by the latter as "my nephew," and respondent addressed decedent as "uncle."

Appellant filed a petition to determine who was entitled to the devise. At the first trial, appellant obtained a directed verdict and judgment in his favor. This judgment was reversed on appeal upon the ground that there was a latent ambiguity in the will as to the identity of the devisee and that extrinsic evidence as to such identity was erroneously excluded. (*Estate of Nunes,* 123 Cal.App.2d 150 [266 P.2d 574] ; hearing denied by Supreme Court.)

Respondent prevailed on the second trial, and this appeal followed. ■ The first question is whether the proof establishes respondent's claim of latent ambiguity as to identity. If it does, extrinsic evidence is admissible. (*Estate of Nunes, supra.*) Many witnesses testified that decedent referred to respondent as "my nephew." Among these were a radio announcer, a nurse who cared for decedent, a fruit packer, a fruit canner, neighbors, old friends, a former tenant on decedent's ranch, a building contractor who had dealings with decedent, a woman who was raised from childhood by decedent and his wife, a former laborer who had worked on the ranch, an insurance broker who handled decedent's insurance, a retired police officer, and the lawyer who had handled decedent's legal affairs for many years and who drew the will in question.

Respondent conducted his business under the name "Joe E. Nunes"; he signed checks with that name and many of these checks had been seen by decedent; in fact, some of these

---
*Assigned by Chairman of Judicial Council.

checks were payable to decedent; respondent's mail box at the ranch where he lived carried that name; he signed a deed of trust in favor of decedent in that name; he made up tax returns in that name; his automobile registration certificates and other documents so designated him.

It will thus be seen that there is ample evidence to support a finding (implied by the verdict) that decedent identified respondent as "Joe E. Nunes, a nephew of mine."

On the other hand, appellant is a nephew of decedent without any dispute. However, he was best known as Joseph Nunes or Joseph E. Nunes. At the trial he testified that his name was "Joseph E. Nunes" and that he did most of his work under this name. His birth certificate named him as "Joseph." His trucks had "Joseph E. Nunes" printed on them, his mail box carried that name, and his radial trucking permit was issued in that name. His authorized bank signature and his telephone listing were in that name.

The foregoing is by no means an exhaustive summary of the evidence on identity. ██ As was held on the prior appeal, "Joseph" and "Joe" are not necessarily the same name and the word "nephew" does not necessarily describe a legal blood relationship.

Evidence contrary to that favoring respondent is not set out herein because it simply raised a conflict for the trier of facts to determine, which conflict was determined in favor of respondent.

On the previous trial there was an offer of proof made on behalf of respondent herein which included an offer to prove that in Portugal, the native country of decedent, it is the common custom and practice to call a second cousin, nephew or uncle. No evidence of this was produced at the second trial. Appellant says that this court on the prior appeal "gave importance" to this offer and that "Had the Portuguese custom been proved, there may still be some basis to argue that additional explanatory evidence might be admitted." A reading of the prior decision shows that the custom was only a part of the evidence offered to establish the latent ambiguity and that the holding that such evidence could prove such ambiguity was not dependent upon this one part alone.

██ Appellant next complains of the refusal of proffered evidence showing fraud by respondent in his dealings with decedent. In determining whether respondent was the "Joe" described in the will by decedent it was, of course, pertinent

to determine his state of mind toward respondent at and prior to the execution of the will. Testimony on this issue, both favorable and unfavorable to respondent, was admitted at the trial. Three of appellant's witnesses testified that decedent had stated that respondent would not account to him for the ranch profits and was cheating him. Respondent made no objection to this line of testimony. Appellant then offered to prove that respondent had in fact been cheating decedent and that respondent had not paid over decedent's full share of the ranch operation. This offer of evidence was rejected on the ground that the question was not whether respondent had in fact cheated decedent but whether decedent believed or knew that he had. Appellant properly argues that if decedent had such a belief then it would be unlikely that respondent was the "Joe" he had intended to designate in his will. *But* the correctness of such belief is immaterial, and an inquiry into the accounting and tax records of the ranch's operations would open up a matter highly prejudicial to respondent if he had in fact defrauded the decedent. At the oral argument on this appeal appellant's counsel stated that they could only prove "one thing at a time" and the first thing was to prove the fraud. However, counsel admitted that proof of such fraud was immaterial unless decedent knew of it. Such claim of knowledge was not included in appellant's offer of proof. We think the trial court properly excluded the offer. In *Avery* v. *Wiltsee,* 177 Cal. 484, 487 [171 P. 95], the court said: "Where a party seeks to introduce incompetent evidence, relevant, if at all, only because connected with other evidence already in the case, and admissible solely because of such connection, and where, if erroneously admitted, it would be prejudicial to one of the parties, and would have little, if any, proper weight with the jury, the trial court, if in doubt as to the sufficiency of the connection shown, should resolve the doubt in favor of the exclusion of the evidence, for the error in its exclusion, if any, would not be prejudicial to either party, while the error in its reception, if any, would be prejudicial to the party against whom it is offered."

Appellant concludes by arguing that the evidence is insufficient to sustain the verdict. From what has already been said herein, it is clear that (1) a latent ambiguity as to identity was established, (2) extrinsic evidence was therefore admissible to establish identity, and (3) such extrinsic evidence was amply sufficient to sustain the verdict. It would serve no useful purpose to summarize the testimony, covering

over seven hundred pages of transcript, or comment on the seventy-four exhibits admitted in evidence.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 16, 1956, and appellant's petition for a hearing by the Supreme Court was denied June 6, 1956.

*Assigned by Chairman of Judicial Council.