[Civ. No. 19752.   Second Dist., Div. Three.   Dec. 17, 1953.]

GLADYS HAYS, Appellant, v. JOHN A. VISCOME et al., Respondents.

Dee B. Tanner and Tanner & Thornton for Appellant.

Early, Maslach, Foran & Tyler, Victor E. Williams, Donald J. Pierr, C. F. Jorz and John G. Zelezny for Respondents.

SHINN, P. J.—Plaintiff appeals from a judgment entered upon a verdict in the sum of $700 as damages for injuries suffered in an automobile accident. She was a passenger in a car driven by John M. Teyshak, with the consent of the owner, John E. Haworth. The car collided with one driven by Cecelia Wekerle, which belonged to John A. Viscome, and was being driven with his consent. She sued the four named persons; all of them except Teyshak were served with process and filed answers. She made a motion for a new trial, which was denied.

Plaintiff's brief contains numerous assignments of error and also urges as a ground for reversal inadequacy of the award of damages.

The ultimate question on the appeal is whether upon a review of the record, including the evidence and a consideration of the claimed errors, we feel reasonably assured that plaintiff has suffered a miscarriage of justice. We are satisfied that this question requires an affirmative answer, and without discussing at length the several claims of error, we shall set forth only a sufficient number of them to support our conclusion that the judgment should be reversed.

The award of damages was small, and clearly inadequate if plaintiff suffered the severe injuries she claimed, but we find it unnecessary to decide whether the inadequacy was such as to justify a reversal upon that ground. The errors and other matters to which we shall refer related directly to the evidence which bore upon the extent of the injuries and probably had a distinct influence upon the amount of the verdict. The amount of the verdict implies that the jury found that plaintiff suffered only minor injuries.

When the collision of the cars took place, plaintiff was thrown forward and her head struck the dash board. There was evidence that the blow raised a bump on her head and that she lost consciousness for 10 or 15 minutes; within about an hour after the accident plaintiff was attended by Dr. Walter Wilson, a general practitioner in Redondo Beach; she was in bed, complaining of headache and back pain, and difficulty with her vision; she was immediately removed to a hospital where she was confined in bed for a week, under treatment; she exhibited "marked tenderness lumbosacral joint space and third, fourth, fifth lumbovertebrae" according to the hospital records, and also "blurring of vision, right eye

especially'' and ''dizziness.'' X-rays of the back and head were negative. After returning home she suffered dizzy spells and fainted several times; she was attended by a practical nurse for four weeks at a cost of $25 per week. Dr. Wilson testified that plaintiff sustained a cerebral concussion and contusion. The accident occurred July 24, 1951. In September, 1951, Dr. Wilson operated on plaintiff to correct a retroverted uterus and remove an ovarian cyst, conditions which predated the accident. Plaintiff was employed at the time as a plastic fabricator for Douglas Aircraft Company. In October she returned to her employment but because of pain was unable to continue her work. She later obtained other employment which would not require her to stand, but found that work painful and gave up the position. She has not been employed since that time. Between the date of the accident and the time of trial Dr. Wilson saw plaintiff 45 times. He testified that in his opinion she was suffering from a ruptured intervertebral disk which caused pressure on a nerve; that her condition would become worse, and that the ruptured disk required surgery, the cost of which would amount to about $750 and would be followed by a convalescence period of about three months. In April, 1952, Dr. Alberto Marinacci, a nerve specialist, gave plaintiff a thorough examination in a hospital. He testified to an opinion that plaintiff was suffering from ''a moderate involvement of the fifth lumbar nerve on the right'' and that that nerve was ''moderately defective in function, in performance.''

On October 28, 1952, a week before the commencement of the trial, at the request of one of the attorneys for defendants Viscome and Wekerle, plaintiff submitted to an examination by Dr. Berryman. At the request of defendants she was also examined by Dr. Stanley Haft, an orthopedic specialist who testified for the defendants. In brief, his testimony was that he found nothing the matter with plaintiff.

On Friday afternoon, near the close of the trial, Dr. Berryman had not been called by defendants as a witness. Plaintiff called to the stand Victor E. Williams, one of the attorneys for defendants Viscome and Wekerle. He was asked the following question by Mr. Tanner, one of plaintiff's attorneys: ''Q. Mr. Williams, did you arrange for a medical examination of Mrs. Gladys Hays with your doctor, Dr. Berryman in Beverly Hills? MR. JORZ: I object to that as immaterial. I assign it as immaterial, inflammatory and prejudicial, not only to the defense of that man's client but my client and I

want the record to show my assignments. THE WITNESS: For the record, I am going to put in the same objection, your Honor, for the sake of the record.'' Then followed a lengthy colloquy out of the presence of the jury. Mr. Tanner explained that the purpose of his question was to put in evidence the fact that plaintiff had submitted to an examination by Dr. Berryman at the request of the defendants; that Dr. Berryman had not been called by the defendants as a witness; that therefore plaintiff's counsel would be privileged to comment upon that fact to the jury, in view of the rule of law that it was to be presumed that the evidence of Dr. Berryman, if produced, would have been adverse to the defendants. He was told to state his offer of proof and he did state that the witness would testify that he demanded that plaintiff submit to the examination by Dr. Berryman, and if she refused that he would insist upon an order of court for an examination, consisting of ''an electromyography study of the nerve roots flowing from the lumbar vertebra.'' The court questioned: ''Is that all?'' and Mr. Tanner responded: ''That is all.'' Mr. Tanner then made a further offer to prove by the witness that Dr. Berryman had stated to the witness that he had discovered in his examination a lesion at the first sacral vertebrae. A lengthy colloquy followed out of the hearing of the jury. The court sustained objections to the offers of proof. Inasmuch as the situation with relation to the second offer of proof is unlikely to arise upon a retrial we shall consider only the rejection of the first one. As to this offer the court specifically held that plaintiff did not have a right to show that plaintiff submitted to the examination upon demand of the defendants. According to the law books the objections of the defendants to the question propounded to Mr. Williams were unsound.

It is not questioned by defendants on the appeal that Dr. Berryman examined plaintiff at their request and was available as a witness. At the time of the proceedings related above, defendants had closed their case without calling Dr. Berryman and Mr. Williams had been called by plaintiff in rebuttal. The omission to call Dr. Berryman was intentional and calculated. It was a situation which made peculiarly applicable the rule that where a party has an opportunity to call a witness who is prepared and qualified to testify as to a fact in issue and fails to do so, it may be inferred by the trier of fact that the evidence if given would be adverse to such party. Plaintiff has cited many cases holding the rule

applicable under comparable facts. *Gluckstein* v. *Lipsett*, 93 Cal.App.2d 391, 397 [209 P.2d 98], is directly in point. In *Bone* v. *Hayes,* 154 Cal. 759, at 765 [99 P. 172], the court said: " 'It is a well-settled rule that when the evidence tends to prove a material fact which imposes a liability on a party, and he has it in his power to produce evidence which from its very nature must overthrow the case made against him if it is not founded on fact, and he refuses to produce such evidence, the presumption arises that the evidence, if produced, would operate to his prejudice, and support the case of his adversary.' [Citing cases.]'' The general principle is stated in section 2061, subdivisions 6, 7, Code of Civil Procedure, and in Wigmore on Evidence, 3d edition, volume II, sections 285, 286, pages 162, 166. If the evidence is found to have been wilfully suppressed it will be presumed that it would have been adverse. (Code Civ. Proc., § 1963(6); see *Freitas* v. *Peerless Stages, Inc.,* 108 Cal.App.2d 749 [239 P.2d 671]; 10 Cal.Jur., p. 781, § 87.)

In reply, defendant Haworth answers that the court gave an instruction that: "If, and when you should find that it was within the power of a party to produce stronger and more satisfactory evidence than that which was offered on a material point, you should view with distrust any weaker and less satisfactory evidence actually offered by him or her on that point." This is no answer to the point made by plaintiff. The instruction states the best evidence rule declared in section 2061(7) of the Code of Civil Procedure but omits the more pertinent rule of subdivision 6: "That evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; . . ." Defendants Viscome and Wekerle in their brief evade the question. They say that plaintiff's only purpose was to improperly bring before the jury a claimed statement of Dr. Berryman as to plaintiff's injuries, and they do not otherwise endeavor to justify the court's ruling on the first offer of proof. Their position is not supported by the record. It shows that plaintiff claimed the right to prove that Dr. Berryman's examination was pursuant to defendants' demand. The error was prejudicial, and seriously so. Not only would minds trained in the law at once gain the firm impression that Dr. Berryman would have been called as a witness if his evidence would have favored the case of the defendants, but any intelligent juror, if properly instructed, could well believe that the de-

fendants were concealing material evidence which, if produced, would be unfavorable to their cause.

The critical question in the case was whether plaintiff had suffered an injury which resulted in nerve pressure. The physicians who testified were in sharp disagreement. Had the significance of the failure of the defendants to call Dr. Berryman been explained to the jury, the conclusion as to the extent of plaintiff's injuries might have been altogether different. As previously noted, the small verdict manifests disbelief on the part of the jury that plaintiff's injuries were serious. Plaintiff should have been permitted the full benefit of the rule of evidence which, by the court's ruling, was excluded from consideration by the jury.

When the court rejected the offers of proof at about 2:30 Friday afternoon, plaintiff's attorneys requested a continuance until Monday morning in order to give them an opportunity to bring in Dr. Berryman, whose office was in Beverly Hills. They explained that they were taken by surprise by defendants' failure to call Dr. Berryman and by the court's ruling; that they had not placed the doctor under subpoena because they had not anticipated that it would be necessary to call him as a witness for plaintiff. The court refused the requested continuance upon the ground that plaintiff should have had the doctor under subpoena. There were too many cases, the court said, to permit of the delay and the loss of a half day's time of the court; also that it would be an abuse of discretion to grant the continuance. We think it was an abuse of discretion to refuse it.

In view of the conflicting evidence as to the extent of plaintiff's injuries, Dr. Berryman's testimony as to the result of his examination might have been vital. The court stated to counsel that they should have known much earlier that they would have to call Dr. Berryman. They could not have known this unless they had known that defendants did not intend to call him, and to assume this would be to assume that defense counsel knew that the doctor's testimony would be adverse. The matter arose as soon as defendants had rested their case and it was not until then that plaintiff's counsel knew that defendants would not call the doctor. The fact that there were other cases awaiting trial did not warrant a denial of the requested continuance. A litigant is entitled to a fair share of the court's time, and may not be deprived of an opportunity to present his case fully and fairly because someone else is being inconvenienced by having to

wait his turn. No lawyer can foresee or predict all the vicissitudes that will occur in the course of a contested trial, which often consist of unpredictable rulings of the court. [2b] Plaintiff's attorneys were not negligent in failing to anticipate that defendants would not call Dr. Berryman. They acted promptly and their request for a continuance was reasonable. As a matter of fact, it is stated in plaintiff's brief and not denied by defendants that the court was occupied with other testimony until 3:50 p. m. and at 4:05 p. m. the case was continued to Monday morning. Moreover, so far as wasting the court's time is concerned, the record shows that when court was adjourned shortly after 4 o'clock on Friday afternoon, the court stated that inasmuch as Tuesday was a legal holiday there would be a court session on Monday morning, but not on Monday afternoon, and the jurors were instructed that they should be prepared to return to court, after the adjournment Monday noon, at 9 o'clock a. m. on Wednesday. By adjourning the case from about 3:50 p. m. on Friday until Monday morning probably a quarter of an hour's time would have been lost; by adjourning the trial from Monday noon until Wednesday morning, a good half day would have been lost. However, we deduce from the record that the verdict was reached on Monday. The court stated no sound reason for denying the continuance and we can discover none. Had we been in the position of the trial judge we would have considered denial of the requested continuance to be an abuse of discretion. As a reviewing court, our views are not different, and we cannot put them aside merely because the trial judge believed it would be an abuse of his discretion to grant the continuance. We must be guided by the dictates of our own judgment and experience, and we hold that plaintiff's case was prejudiced for no good reason by denial of her request of a short continuance. Defendants' discussions of the point are perfunctory and without the citation of authority. We pass to another ruling of the court which emphasizes the harm of the ones we have discussed.

During the argument, at the request of one of defendants' attorneys that the jury be instructed to draw no inferences with respect to the discussion in the presence of the jury concerning Dr. Berryman, the court made the following statement: "THE COURT: Yes. I will generally instruct the jury now in that respect without making a formal instruction on it. As already indicated to you, ladies and gentlemen, when questions of law arise which are wholly the responsibility of

the Judge and occasional arguments, as I say, sometimes it gets out into the open so that you hear some part of them and you hear some names mentioned. I will instruct you formally at the conclusion of the case that any thoughts expressed by me or any statement made by counsel are to be disregarded by you in so far as the facts of the case are concerned. It is only fair to state on behalf of all parties that since Dr. Berryman's name has been mentioned and now all parties have rested, meaning he is not to be produced as a witness by anybody, that you shall draw no inference one way or the other as to which side might have called him, what his testimony might have been, what cross examination might have taken place, who he would favor, the fact of who he was. We sometimes ask the impossible. This is one of those times. Forget it. Go ahead, Mr. Tanner.'' ██ This, of course, was to tell the jury that they should not even consider, for any purpose, the failure of defendants to call Dr. Berryman as a witness. It would be expounding upon the obvious to point out the harmful error in this instruction.

Plaintiff received an interlocutory decree of divorce in Contra Costa County October 15, 1950. On October 8, 1951, she had a marriage ceremony in Tiajuana. Obviously confused, she made a statement, when questioned by the court, that she obtained the interlocutory decree in October, 1951. Thereupon, the court asked ''Did you tell the Judge on October 15th when you appeared before him to get your interlocutory judgment of divorce what had happened in respect to your trip to Tiajuana the week before?'' and plaintiff answered ''No.'' Plaintiff then explained that she had obtained an interlocutory decree the previous year; but the fact remained that she had married within a year, which she endeavored to excuse by insisting that she understood she could lawfully do so. The tendency of the questioning by the court was to bring to light misconduct of plaintiff, if such existed. It was an accusatory inquiry into plaintiff's conduct, clearly irrelevant to the issues. We might not have mentioned the incident had not Mr. Jorz taken advantage of it in his argument. He said: ''The plaintiff has changed her testimony on the witness stand and right in there there is one thing that occurred during the course of this trial which was not material to the issues in this case but it should indicate to you that it is important in weighing the credibility of her testimony. That was this: It was a matter developed by the Court. She came in here and asked our courts for a divorce.

She had gone down to Tiajuana and married another man. The Judge said, 'Did you inform the Court here that you had gone to Tiajuana and gone through a marriage ceremony when you asked for a divorce here,' and she said no. Does that indicate a tendency on her part to cover up? Does that indicate a tendency on her part to be fair and open, free and frank? No, if she would withhold on a court trying a divorce case, she might withhold in this instance" etc. ". . . but that incident, while it related to an immaterial matter to the issues in this case, indicates what she would do in answering questions of a Judge on the witness stand." This was not a fair or accurate statement of the record, and it was highly prejudicial. Plaintiff did not assign the statements of Mr. Jorz as misconduct, nor did she request that the jury be admonished to disregard them. We do not decide whether an admonition would have undone the harm since we are not considering the incident, even when coupled with the improper questioning by the court, as a separate ground for reversal.

Plaintiff contends that she was prejudiced by the conduct of the trial judge, consisting of constant interruptions of her counsel and her witnesses, comments of a critical nature and innumerable rulings sustaining objections upon trivial grounds, all of which, it is claimed, indicated that the court was out of sympathy with her case. We have examined the passages in the transcript to which reference has been made and many others. They support plaintiff's contention that she experienced difficulty in presenting her case in an orderly manner. Although there is no evidence of prejudice in a legal sense, there is abundant evidence of a failure to exercise the high degree of patience and forbearance with counsel and witnesses which is the constant duty of the court in the trial of a jury case. It has been emphasized, time and again, that jurors are quick to observe the attitude of the court toward litigants and their counsel, whether favorable or unfavorable, and to be influenced thereby. (*Delzell* v. *Day*, 36 Cal.2d 349 [223 P.2d 625].) When complaint is made upon this score, we have no disposition to be critical of the conduct of a trial court, and yet we may not ignore or minimize assignments of misconduct made with conviction and in good faith.

There are other assignments of error which we need not discuss. It should not be assumed, however, upon a retrial, that they are without merit.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.