[No. A016606. First Dist., Div. Two. Nov. 21, 1984.]

In re the Marriage of NANCY CLAIRE and
THOMAS WALTER HOFFMEISTER.
THOMAS WALTER HOFFMEISTER, Appellant, v.
NANCY CLAIRE HOFFMEISTER, Respondent.

**COUNSEL**

James G. Luce, Diemer, Schneider & Luce and Diemer, Schneider, Jeffers & Luce for Appellant.

Lisa L. Landey and Silverman, Ballard & Landey for Respondent.

## OPINION

## KLINE, P. J.—

### INTRODUCTION/ISSUES

Thomas W. Hoffmeister appeals the trial court's modification of a spousal support order upon a motion by appellant's ex-wife Nancy C. Hoffmeister. The motion was based in large part upon an asserted change for the better in appellant's ability to provide an increased level of support. The appeal is based upon contentions that relate to two issues: first, whether appellant was denied a fair hearing and, second, whether the increase ordered in spousal support was supported by the evidence.

### FACTS

The parties separated in September 1979 after nearly 23 years of marriage. Final judgment of dissolution of marriage was entered on August 18, 1981. The court ordered payment by appellant of $1,500 per month spousal support to continue until December 31, 1982, after which the court continued to retain jurisdiction to modify its support order.[1]

In November 1981, respondent moved the court to modify her spousal support to extend its duration beyond December 31, 1982 and to increase the support award to $3,250 per month. By declaration filed with respondent's application for modification, she alleged as a change in circumstances that appellant's earnings and assets had dramatically increased and his expenses had decreased since the last court order,[2] while the $1,500 per month spousal support awarded to her was inadequate to meet her needs.

---

[1]In respondent's declaration she points out that at the time the judgment was entered she anticipated working toward her degree in interior design and estimated that she would have graduated in December 1982. However, she has found herself unable to carry the maximum 17-unit load and has been carrying instead a full-time load of 12 units and at the time of the motion for modification of support order estimated that she would graduate no earlier than June 1983.

[2]At trial it was established that appellant's gross monthly salary increased from $4,775 in December 1979 to $8,333 at the date of the hearing plus a large annual bonus which he had received every year since 1971. In October 1981 appellant received a bonus of $36,500, plus options to purchase additional shares of stock in the company that employs him, increased matching company contributions to a savings plan, and use without any expense of a 1982 El Dorado Cadillac.

After hearing, the trial court granted respondent's motion to modify the spousal support order, increasing spousal support to $2,500 per month and continuing such support until the remarriage of respondent, the death of either party, or further order of the court. The court invited appellant to petition for modification after respondent completed her degree requirements and obtained professional employment.

In its statement of decision the court found a substantial change of circumstances since the original order of March 13, 1980, which was signed and filed on June 4, 1981. The court stated that appellant had realized a "great increase in income since the current order was made" and that appellant had the ability to pay the increase in spousal support ordered, regardless of the amount of bonus he receives. The court also determined that respondent had a need for the increase in support ordered and that such need was a continuing one. Whereupon the court increased spousal support as indicated and ordered appellant to contribute $1,500 toward respondent's attorney's fees.

On February 17, 1982, appellant filed a "request for statement of decision and petitioner's objections to proposed statement of decision." Without responding specifically to that request, the court on February 24, 1982, entered an order modifying the spousal support order and awarding respondent attorney's fees and costs consistent with its earlier statement of decision.

A timely appeal followed.

## DISCUSSION

### I

### Whether the court denied appellant a fair hearing.

The hearing on the motion for modification was originally set for December 15, 1981. It was continued at appellant's request to allow him to conduct discovery. At her deposition, respondent admitted that expenses listed in her financial declaration had not actually been incurred, but were projected expenses necessary to meet her needs. She answered questions relating to her actual and projected expenses; however, when asked why she was seeking spousal support of $3,250 per month when she had claimed monthly expenses of only $2,416, respondent's counsel objected on the curious ground that the question called for a legal conclusion and on the equally unusual theory that the subject of the query was protected by the attorney-client privilege.

Appellant filed responsive points and authorities in opposition to the motion for modification on January 29, 1982. On February 5, 1982 respondent filed a memorandum of points and authorities supporting modification and included an amended financial statement. The proof of service showed that the same had been mailed to appellant on February 4, 1982. The financial statement accompanying the points and authorities differed from the prior financial statement filed in support of the original motion for modification in that it listed as expenses an additional $321 per month, consisting of a $5 increased mortgage payment, $100 in property taxes, and the $216 monthly payment of past due federal and state income taxes.

On February 8, 1982, the date set for hearing, the court denied appellant's motion for a continuance which was made on the ground that appellant had received respondent's amended financial statement and points and authorities on the Friday prior to the hearing and had inadequate time to respond to the newly raised legal and factual issues. The court stated that it had received the most recent papers only an hour before the hearing and had adequate time to review them. Counsel for appellant then moved to strike the papers served on him on February 5, 1982, contending that they were untimely under Code of Civil Procedure section 1005. The court initially granted the motion subject to reconsideration after hearing testimony. The court later reversed its ruling and allowed the financial statement into evidence, stating: "I'm going to reverse my original ruling and not strike the declarations of the Respondent here, Mr. Luce. I'm going to consider the declaration which was filed on February 5. I think it is of assistance to the Court and it would be brought out by testimony. It will just shortcut testimony. [¶] You may refer to the amended declaration."

 Appellant contends he was denied a fair hearing by the trial court's failure to grant the continuance sought or, in the alternative, strike the points and authorities and the financial declaration assertedly filed in violation of Code of Civil Procedure section 1005; and by considering the evidence regarding increased taxes presented by the papers and by testimony of respondent and her expert witness despite the fact that, due to respondent's invocation of the attorney-client privilege at her deposition, appellant was earlier prevented from learning of much of this evidence.

A review of the record has compelled us to conclude that appellant was denied a fair hearing by the court's failure to either grant the continuance or strike the amended financial declaration.

 Generally speaking, the courts have repudiated the view that the trial court should exercise great liberality in granting continuances. As stated by the court in *County of San Bernardino* v. *Doria Mining & Engineering*

*Corp.* (1977) 72 Cal.App.3d 776 [140 Cal.Rptr. 383], "[C]onsidering the need for efficient use of judicial resources, we conclude that there is no policy in this state of indulgence or liberality in favor of parties seeking continuances. Rather, such parties must make a proper showing of good cause, in accordance with rule 224 of the Rules of Court, standard 9 of the Standards of Judicial Administration, and the case law. And, if the law must have some kind of litany or Gregorian chant in this field, we respectfully suggest that 'continuances be granted sparingly, nay grudgingly, and then only on a proper and adequate showing of good cause.'" (*Id.*, at p. 781, fn. omitted.)

■ However, "[t]he trial judge must exercise his discretion with due regard to all interests involved, and the refusal of a continuance which has the practical effect of denying the applicant a fair hearing is reversible error. [Citations.]" (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 8, pp. 2865-2866.) ■ Good cause for a continuance may be established where a party has been surprised by unexpected testimony and requires a postponement to enable him to meet it. (*Id.*, § 17, p. 2873; see *Crosby* v. *Martinez* (1958) 159 Cal.App.2d 534, 541 [324 P.2d 26]; *Hays* v. *Viscome* (1953) 122 Cal.App.2d 135 [264 P.2d 173, 39 A.L.R.2d 1435]; CJER, Cal. Judges Benchbook, Civil Trials (1981) § 9.26, pp. 289-290.) Allowance of an amendment to a pleading may make a continuance necessary. (Code Civ. Proc., § 473; 4 Witkin, *supra*, § 18, pp. 2873-2874.)

■ Code of Civil Procedure section 1005 provides in pertinent part: "When a written notice of a motion is necessary, it shall be given at least 15 days before the time appointed for the hearing and shall be accompanied by all supporting points and authorities, declarations, and other supporting materials; provided that if the notice is served by mail, the required 15-day period of notice before the time appointed for the hearing shall be increased by five days if the place of address is within the State of California . . . . All papers opposing a motion so noticed shall be filed with the court and served on each party at least five days before the time appointed for the hearing. [¶] *The court, or a judge thereof, may prescribe a shorter time.*" (Italics added.)

Notice of the motion in this case was given several months prior to the actual hearing by virtue of the continuance granted at appellant's request and the discovery which followed. The memorandum of points and authorities filed by respondent ostensibly responded to appellant's opposition to the initial motion. However, to the considerable extent that respondent's reply memorandum presented new factual and legal issues, it should have been provided to appellant at least 15 days prior to the hearing. We recognize that the statute does provide that the trial court may prescribe a

shorter time. (Code Civ. Proc., § 1005.) However, no such prescription was sought by respondent nor made by the court. The trial judge simply stated, after the fact of the late filing, that he nevertheless felt he had adequate time to prepare. However, the question appellant raised was not whether the trial court was familiar with the issues, but whether he himself was denied an adequate opportunity to contest new claims advanced by respondent at virtually the last moment. We believe he was denied such an opportunity.

The court itself initially struck the amended financial declaration, apparently agreeing that fairness to appellant required it to do so. However, it later reversed itself and allowed the document to be presented. We cannot be certain whether the court actually considered respondent's amended financial declaration in determining her need for purposes of the spousal support award.[3] The court's statement of decision recited that it had "considered the tax consequences of the respective parties in determining the amount of spousal support." But this does not necessarily indicate that the court considered the additional tax expenses newly claimed by respondent. Rather, it appears that the court may have been referring to the testimony of respondent's expert as to the actual costs to appellant or one in his tax bracket of spousal support awards of varying amounts.[4]

Neither can we be certain, however, that the court disregarded the amended financial declaration. Absent a clear statement by the court that it did not consider the amended declaration in reaching its decision, we must assume that it did consider all the relevant evidence before it.

Our conclusion might be different if appellant had been provided an opportunity to discover the basis of the increased expenses asserted in the amended financial declaration prior to the eve of the modification hearing. By asserting the attorney-client privilege when questioned as to why there was a discrepancy between her stated expenses and the amount sought for

---

[3]The trial court only modified the support award to $2,500 per month, which appears to be based upon the initial financial statement provided by respondent, which showed total monthly expenses of $2,416. The subsequent financial statement filed by respondent claimed total monthly expenditures, including the asserted tax expenses, of $2,737. Respondent actually sought $3,250 per month.

[4]The testimony of respondent's tax expert centered on the fact that one in appellant's tax bracket would actually pay only 45 percent of any amount awarded as spousal support. "[S]ince spousal support is deductible in effect he would end up paying from after tax money only 45% of any spousal support payment."

spousal support, respondent prevented appellant from acquiring this information.[5]

As we have indicated, the granting of a continuance was not the only remedy available to the trial court. As appellant requested in the alternative, the court could have stricken the amended financial declaration. Code of Civil Procedure section 2019, subdivision (b)(1), provides with respect to depositions that "the court may make any . . . order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." It has been held that this section grants the court the power to preclude at trial the use of evidence withheld by a party at deposition on the basis of the Fifth Amendment privilege against self incrimination. (*A & M Records, Inc.* v. *Heilman* (1977) 75 Cal.App.3d 554, 567 [142 Cal.Rptr. 390].) No reason appears why the same cannot be done where relevant evidence sought to be discovered at deposition is withheld on the basis of the attorney-client privilege. "So long as the penalty is appropriate to the dereliction and does not exceed the protection required to protect the interests of the party entitled to but denied discovery, its imposition is within the discretion of the trial judge." (*A & M Records, supra,* 75 Cal.App.3d at p. 565.) In short, the trial court had the power to preclude at the hearing the use of any evidence withheld from appellant at deposition as well as the related documents belatedly filed. While the court was not compelled to exercise this power, it was in our view an abuse of discretion and unjust not to at least grant appellant a brief continuance in order to provide him an opportunity to review the adverse evidence that was instead permitted to surprise him.[6]

We reverse on the ground that the refusal of the court to grant a reasonable continuance to enable appellant to meet the newly amended financial declaration denied appellant a fair trial. We therefore need not address appellant's contention that the court erred in failing to make specific findings requested by appellant. (See Code Civ. Proc., §§ 632, 634.)

---

[5]Appellant had available an avenue to compel further discovery if he contended that the information sought was not properly covered by the attorney-client privilege. He could have sought an order compelling respondent to answer pursuant to Code of Civil Procedure section 2034. We do not purport to determine on this appeal the likelihood of success of such a motion. Whether properly asserted or not, respondent's invocation of the privilege prevented discovery of the new figures. It seems only fair to allow appellant an opportunity to prepare to challenge the figures when respondent later sought to introduce them at the modification hearing.

[6]We do not here suggest that the court erred in allowing respondent's tax expert to testify concerning the tax consequences to appellant of increased support payments. Appellant cannot properly claim to have been surprised by such testimony as he failed to avail himself of the simple procedure provided by Code of Civil Procedure section 2037 to compel disclosure of expert witnesses.

However, for the guidance of the court on retrial, we proceed to address appellant's central contention: that the court erred in increasing the amount of spousal support where the only evidence of "changed circumstances" was the increased ability of appellant to pay support.

## II

### Whether the trial court erred in increasing the amount and duration of spousal support.

The linchpin of appellant's argument is that the modification of support order was based solely upon appellant's increased ability to pay and that "[t]here was no evidence of substantial or justified increased need on the part of Respondent." Without assessing the accuracy of this disputed characterization of the facts, which is unnecessary in light of our remand of the case, we think it useful to correct the misapprehension of law implicit in appellant's argument.

In order to qualify for an increase in spousal support, the supported spouse must demonstrate two things: first, that material circumstances have significantly changed since the time of the last prior award and, second, that the reasonable present needs of the supported spouse are not being satisfied. Though these two factors are conceptually distinct, in most cases both can be proved by a single factual demonstration that the supported spouse's needs have increased from the time of the most recent support order. In most cases, in other words, the increase in need will *also* constitute the changed circumstance. But this is not always true; as there are situations in which the change in circumstance arises out of facts relating to the supporting spouse rather than to the level of need of the supported spouse.[7] Moreover, in a situation of this sort, it is entirely possible for the supported spouse to show that his or her present need is not being met despite the fact that that need has not increased. Appellant's error, as we shall see, lies in the related assumptions that the only change in circumstance that matters is that of need, and that there can be no increase in support unless there has been an increase in need.

It is elementary that a trial court "is without authority to modify an order for spousal support unless there has been a material change in circumstances subsequent to the last prior order." (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654] citing *Engelberg* v.

---

[7]Conceivably, there may also be situations in which the change in circumstances arises out of economic facts that may relate to both the need of one spouse and the ability to pay of the other—such as significant inflation of the currency.

*Engelberg* (1968) 257 Cal.App.2d 821, 823-824 [65 Cal.Rptr. 269]; *Peterson* v. *Peterson* (1973) 30 Cal.App.3d 477, 479 [106 Cal.Rptr. 482]; and *Hester* v. *Hester* (1969) 2 Cal.App.3d 1091, 1095 [82 Cal.Rptr. 811].)

■ Contrary to appellant's contention, it is established that an increase in the husband's ability to pay may be considered a change in the circumstances of the respective parties sufficient, if there is also a showing of need, to justify an increased spousal award. "The change of circumstances which authorizes a court to modify a support order means a change in the circumstances of the respective parties, i.e., a reduction or increase in the husband's ability to pay and/*or* an increase or decrease of the wife's needs." (*In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860-861 [137 Cal.Rptr. 670], italics added.) *Sammut* v. *Sammut* (1980) 103 Cal.App.3d 557 [163 Cal.Rptr. 193] exemplifies the circumstances in which a change only in the supporting spouse's ability to pay may justify an increased award. In that case the husband originally agreed to pay the wife $200 a month spousal support, which sum was subject to modification by the court upon a showing of changed circumstances. Some years later, when the wife sought modification, the court ordered spousal support increased by $600 per month, to a total of $800. It appears that the only change in circumstance that justified the increase was that as a result of an inheritance from his parents subsequent to the divorce, the husband was now receiving $5,618 per month in dividends as the beneficiary of a life estate. As stated by the court, "[t]here was evidence that the original support sum was set at $200 a month because the husband was putting most of the profits [of the family business] back into the corporation rather than taking a large salary. As a result, he had insufficient cash . . . to pay more than $200 a month. The wife's decision to forego higher spousal support was in part influenced by her interest in maintaining the value of the community property shares of stock in the business. As a result of the income from the husband's inheritance, the husband no longer had a cash problem and was now adequately able to meet the wife's needs. *This appears to be a sufficient showing of a change in circumstances to justify a modification of the order.*" (*Id.*, at pp. 563-564, italics added.) ■ *Sammut* is thus consistent with the view that "[i]n general a change of circumstances may be *anything* that affects the financial status of *either* party." (2 Cal. Marital Dissolution Practice (Cont.Ed.Bar 1983) Modification of Orders, § 24.6, p. 967, italics added.)

■ It must at this point be emphasized that, as we have earlier suggested, there is an important distinction between cases in which the only changed circumstance alleged relates to the supporting spouse's ability to pay and those in which the changed circumstance or circumstances is or includes an increase in the need of the supported spouse. In the former situation the supported spouse must demonstrate—*in addition to* the other

spouse's increased ability to pay—that his or her need is not being satisfied by the existing spousal support award. This can be accomplished, as it was in *Sammut,* by evidence that, although the supported spouse's need has not increased, such need was never satisfied, or at least is not now being satisfied, by the last previous award at the time it was made and that need has not decreased.

Appellant's restrictive view that an increase in the need of the supported spouse is the only change in circumstances that will justify an increase in spousal support would work a great injustice. It would mean that despite his or her present financial ability to meet the reasonable needs of the supported spouse, a supporting spouse would be excused from doing so because of an *earlier* inability to meet those needs. Appellant's theory has no support in the law; for no court has ever held that a supported spouse's unmet needs may be ignored simply because they have not increased.

Appellant finds support for his view in the concurring opinion of Justice Fleming in *Modglin* v. *Modglin* (1966) 246 Cal.App.2d 411, 417 [54 Cal.Rptr. 582]. In that case a majority of the court rejected the wife's demand for increased spousal support. "The parties were married in 1948 and divorced in 1959. By stipulation the wife received nearly all the community property (a modest amount which was liquidated and spent), $200 per month alimony for 12 months, and $125 per month for each of 2 daughters. A reserved jurisdiction was included with $1 per month alimony after the 12-month period. In 1964 the wife sought a modification, showing income as a nurse of $3,600 (lower than at the time of divorce), need of dental attention for herself, and need of better home furnishings. She also showed the defendant husband, remarried, had experienced business success, with the net income of $37,500 after taxes, a luxurious home, modern expensive cars and an airplane maintained by his business. The trial judge increased child support but refused additional alimony." (6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 178, p. 5048.) A divided Court of Appeal affirmed. The lead opinion stressed the original stipulation, and concluded that the record did not justify setting aside the bargain the parties had made. (*Modglin, supra,* 246 Cal.App.2d at p. 415.) The concurring opinion, upon which appellant here relies, took an emphatic position against the theory that "an ex-spouse can continue to reap where for many years he or she has not sown." (*Id.,* at p. 417.)[8] The concurring

---

[8]Justice Fleming's entire concurring opinion states as follows: "It is not my understanding that the alimony provisions of a final judgment of divorce settling the property rights and obligations of the parties are, like stock market quotations, subject to modification with every fluctuation, for better or worse, in the fortunes of the parties concerned. I do not believe that under the guise of increased alimony a former spouse is entitled to share a new-found prosperity achieved by an ex-partner with whom relations have long since been legally severed. Such a theory would put the rights of an ex-spouse on a par with those of a current

opinion is not precedential authority. Moreover, we are not, in any event, departing from the central theme of that opinion—that subsequently acquired wealth of the supporting spouse does not *in and of itself* justify an increase in spousal support—with which we do not differ.[9] That is, we agree with appellant that a supported spouse's need is an essential element in determining whether he or she is entitled to an increase in spousal support and that such need cannot be established on the basis of the supporting spouse's newly acquired wealth. Simply stated, the need of one spouse must be established independently of the other's ability to pay.

Accordingly, if upon remand the trial court finds that the prior award of spousal support never was or no longer is adequate to meet respondent's reasonable needs, the court may increase the award regardless whether respondent's needs have increased since the time of the last award (assuming, if her needs have not increased, that appellant concedes or the court again finds that his ability to pay is greater today than at the time of the earlier award).

The judgment is reversed and the cause remanded to the superior court for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

Rouse, J., concurred.

**SMITH, J.**—I concur in the reversal of the judgment because the trial judge failed to grant appellant a reasonable continuance to enable him an opportunity to review and answer the amended financial declaration.

However, I would like to stress that modification of support cannot exclusively turn on whether the supporting spouse has an increased ability to pay. Otherwise, a supported spouse, whose present needs are being met, would seek modification to enjoy a free ride on the new found prosperity of the supporting spouse. Rather, an inquiry into the modification of spousal

---

spouse, would suggest that the ex-spouse is legally entitled to support at whatever style of living the former spouse may thereafter achieve, and would imply that an ex-spouse can continue to reap where for many years he or she has not sown. This flies in the face of our basic concept that prosperity in the matrimonial household is the result of the joint efforts of both spouses—in this case those of the ex-husband and his present wife—and that the parties who make a success of their conjugal venture are the ones entitled to enjoy its fruits." (*Id.,* at p. 417.)

[9]We do, however, differ with Justice Fleming's opinion to the extent it suggests that, regardless whether he or she is financially able to do so, a supporting spouse has no responsibility to satisfy unmet reasonable needs of the supported spouse where such needs have been established independently of the ability to pay of the supporting spouse.

support begins with whether the reasonable needs of that supported spouse are being met.