Filed 9/3/14  Marriage of Tani CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of STUART and MARCY L. TANI. | D064505 |
| STUART T. TANI, | |
| Appellant, | (Super. Ct. No. DN1669854) |
| v. | |
| MARCY L. TANI, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, David G. Brown, Judge.  Affirmed.

Patrick J. McCrary for Appellant.

No appearance by Respondent.

Appellant Stuart T. Tani, D.D.S. (Stuart) appeals prejudgment orders relating to temporary spousal support, made in the dissolution action between Stuart and his former

wife, Marcy L. Tani (Marcy).[1]  Stuart contends the family court abused its discretion in deciding these consolidated motions by (1) incorrectly determining his income in awarding spousal support, (2) denying his requests to compel Marcy to attend a deposition, or to continue the hearing due to untimely responsive filings by Marcy, and (3) denying his request to disqualify Marcy's retained attorney for an alleged conflict of interest.  (Fam. Code, § 4320 et seq.; all further statutory references are to the Family Code unless noted.)

Marcy has not filed a respondent's brief.  We do not consider this to be a concession, and reach the merits of Stuart's appeal.  (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1 (*Riddle*).)  We determine the appeal based on the record provided and Stuart's opening brief.  (Cal. Rules of Court, rule 8.220(a)(2); all further rule references are to these rules.)

On review, the record shows the family court was justified in finding that Stuart's monthly income included the money shown in his business bank accounts over a period of years, and in making a guidelines calculation and corresponding award of $6,533 temporary monthly spousal support.  In light of the record provided, the court's related discretionary determinations to deny a continuance, deny the disqualification request, and deny the motion to compel Marcy's deposition were each supported by the evidence and within the bounds of reason.  We affirm.

---

[1]     The parties have the same surname, and for convenience and meaning no disrespect, we refer to them by their first names.

# I

## *BACKGROUND FACTS*

### A.  Order to Show Cause Regarding Support; Discovery Issues

The parties were married in August 1986.  In August 2011, Stuart filed a petition to dissolve his marriage to Marcy, and alleged the date of separation was June 21, 1991.

Through counsel, Marcy filed her response in October 2011, claiming that the parties had separated in March 2008.  In March 2012, Marcy filed an order to show cause to set spousal support and for other relief, the first contested hearing in the case.  It was assigned a hearing date of June 4, 2012, but was continued.  She filed an income and expense declaration on March 5, 2012, giving her monthly income as $0, with over $6,600 monthly expenses, which had previously been paid by the community business. As of March 2012, her declaration estimated that Stuart's gross monthly income was $20,000, which she knew because she was in charge of bookkeeping for his office.

In opposition, Stuart's declaration stated that from the early 1990's until July 2011, his dental practice at several locations was managed by San Diego Specialty Care Management (the management company), which was owned by Marcy and her business partner John Baker (John).  Stuart found out in 1991 that Marcy and John were having an affair, but they all continued to live in the same house and did not allow their personal problems to interfere with their business relationship.  Later, checks issued by Marcy to Stuart and his consulting firm were returned for insufficient funds.  Marcy and John locked Stuart out of one of his dental offices and withheld his records.  In a letter, Stuart terminated the business relationship in July 2011, claiming mismanagement.

3

In opposition, Stuart submitted approximately 150 pages of lodged financial documents on May 17, 2012, showing his financial troubles that he blamed on Marcy. Marcy replied with approximately 210 pages of lodged financial documents on September 4, 2012, including his June 2011 through February 2012 businesses' bank statements (his personal consulting firm and his current dental company, Allegiance Dental Inc., "Allegiance").

Stuart served a notice on Marcy that her deposition and production of documents would occur October 11, 2012. She responded that she was without counsel and would not appear. On January 10, 2013, Marcy obtained new counsel, Attorney Eugene R. Salmonsen.

The court held a family resolution conference and bifurcated trial on March 5, 2013, on Stuart's request for resolution of the issue of marital status and the continued matters. At that hearing, the court swore the parties to testify, granted the request to bifurcate status, continued the issue of temporary spousal support to May 8, 2013, and set a two-day evidentiary hearing for late September 2013 on the issues of date of separation, property division, and valuation of the business. The court granted a status only judgment effective immediately, reserving the other issues. Both parties were ordered to file updated income and expense declarations by May 3, 2013.

In March 2013, Stuart filed motions to compel Marcy to attend a deposition and for sanctions. Stuart contended Marcy was unjustified in giving several excuses for refusing to be deposed in October 2012.

4

Also in March 2013, Stuart sought disqualification of Attorney Salmonsen as the attorney of record for Marcy. Stuart contended that there was a conflict of interest that prevented Attorney Salmonsen from acting for her, because he had previously represented Stuart's dental practice in a civil action and he therefore had access to its business records and knowledge of its business practices.

In an opposing declaration, Attorney Salmonsen stated that he had been hired by Marcy and John to represent Stuart in a federal trademark/copyright case in 1999. He believed there was no true conflict of interest because the current dissolution issues were completely unrelated to the trademark and copyright issues raised in the prior federal action. The attorney stated he had then worked primarily with Marcy and John and had not received any information from Stuart on any dissolution issues, and that none had been identified in the moving papers. Stuart had referred the matter to the State Bar, and Attorney Salmonsen requested an immediate ruling of no existing conflict.

On May 3, 2013, Marcy filed a new income and expense declaration that gave her gross monthly income as $1,587.60 for 20 hours of work per week. Her expenses averaged $4,697 per month. Her declarations and lodged financial documents were provided only three court days before the hearing, which were fewer than the nine court days required by statute. (Code Civ. Proc., § 1005, subd. (b).) She provided approximately 80 pages of bank statements obtained from Stuart's two businesses, his consulting firm and Allegiance. She claimed that Stuart's gross monthly income was accordingly about $42,844.

5

On the date of the hearing, May 8, 2013, Stuart filed an updated income and expense declaration listing his monthly income as $1,083, paid by Allegiance, with monthly expenses of $3,030. He lodged 80 more pages of financial documents, his personal 2011 tax return (gross wages, $48,000) and Allegiance's 2011 tax return (gross income $220,245). Allegiance's profit and loss statements from January 2012 through March 2013 were also provided.

### B. Hearing and Rulings

At the hearing on all motions on May 8, 2013, the court noted that only 20 minutes had been set for the hearing on temporary spousal support and related matters, and that all other issues would be resolved at the two-day trial set for September 26 and 27. On the disqualification issue, Marcy's attorney, Salmonsen, told the court that in 1999, he had worked primarily with the office managers, Marcy and John, on a copyright case, and he had not dealt with anything else about the functioning of the office or its profitability. The court denied the disqualification motion, stating that an adequate showing had been made in the declarations that there was no conflict of interest as the applicable criteria were defined in case law, *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294.

The court next denied Stuart's motion for sanctions based on the cancelled deposition, because Marcy had adequately notified his counsel she was unrepresented at the time and would soon be retaining counsel, so the matter could have been worked out without incurring the claimed court reporter expenses.

6

On the spousal support and discovery issues, the court told the parties that Stuart's income and expense declaration had not been filed in a timely manner, as he had been instructed to do at the March 2013 hearing. The court stated that Stuart's Allegiance and other bank statements supplied by Marcy showed that within three months, $40,000 in deposits had been made while withdrawals had been under $2,000, and so the court was "having trouble buying into Dr. Tani's assertion that he has no money for spousal support." The court acknowledged that some of the statements were for the previous year, but that Stuart apparently controlled bank accounts showing $30,000 per month balances. The court noted that everyone in the case was giving information late, that this had been going on for a year and a half, and the temporary spousal support issue was still before the court and needed to be resolved. Stuart's counsel stated that he had not received a copy of Marcy's most recent income and expense declaration and requested a continuance for time to analyze her opposing papers. The court denied the request, observing that the file stamp on her declaration showed it had been filed on time, while Stuart's had not.

After conferring with his client, counsel for Stuart notified the court that the money shown in his business bank accounts was borrowed from his mother, but he was only drawing approximately $1,083 per month from the corporation. Counsel for Marcy stated that her evidence showed that Stuart had two or more personal businesses and that his monthly income from 2009 through 2012 had averaged out to about $20,000 per month, if not $30,000.

The court told counsel that "with all due respect, . . . this case is a disgrace," because counsel had been keeping it in the dark. Based upon the 2011 tax returns that showed Stuart's total corporate income was $220,235, in addition to his personal wages, and upon the bank statements, the court made an annualized guidelines calculation that Stuart's monthly income averaged $18,353. Temporary guideline spousal support was set at $6,533 per month, retroactive to April 2012, and an arrearages order was made. The court printed out the guidelines statement for counsel.

## C. Subject Order on Appeal

Orders awarding or denying support are directly appealable as collateral orders directing the payment of money. (*In re Marriage of Skelly* (1976) 18 Cal.3d 365, 368-369.) It is appropriate for appellate courts to construe notices of appeal liberally. (Rule 8.100(a)(2).)

According to our internal records, the notice of appeal filed by Stuart indicated he is appealing from a May 8, 2013 minute order regarding spousal support. Page two of the order directs the preparation of a formal order. Accordingly, we requested that appellant or respondent obtain an appropriate order and promptly submit a copy to the court. We would then construe the notice of appeal as being from the formal order. (See Rule 8.104(d)(2).)

As of May 21, 2014, our records indicate no such formal order was submitted by either party. However, liberally construing the notice of appeal, we are satisfied that the May 8, 2013 minute order regarding spousal support is properly before this court.

8

## II

### *STANDARDS OF REVIEW*

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' " (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1093.) An appellant has the burden of showing that error or a prejudicial abuse of discretion occurred. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1291.)

For any appellant, "[a]ppellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) "We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

We review the challenged award of spousal support for any abuse of discretion. (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1366 (*de Guigne*).) Although the family court has broad discretion to determine an amount of spousal support that is "just and reasonable, based on the standard of living established during the marriage," the court's decision must be based on the evidence, such as the resources of the parties. (*Ibid.*)

In considering if an abuse of discretion has occurred, the appellate court reviews the record provided: "Our review is limited to determining whether the court's factual

9

determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion. [Citation.] We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order." (*de Guigne, supra,* 97 Cal.App.4th 1353, 1360.)

Regarding Stuart's claim about the denial of the continuance of the hearing, the test is again abuse of discretion. "A motion for continuance is addressed to the sound discretion of the trial court. [Citation.] However, ' "[t]he trial judge must exercise his discretion with due regard to all interests involved, and the refusal of a continuance which has the practical effect of denying the applicant a fair hearing is reversible error. [Citations.]" ' " (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395 (*Oliveros*), citing *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169.) The court should take into consideration the degree of diligence in any efforts made to bring the case to trial or hearing. (*Oliveros, supra*, at p. 1396.)

Further, when a court decides whether to grant a continuance or extend discovery, its decision must be directed toward achieving substantial justice, by deciding whether " ' "the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency." ' " (*Oliveros, supra*, 120 Cal.App.4th at p. 1396.)

III

*ANALYSIS: SPOUSAL SUPPORT AND RELATED ORDERS*

Stuart primarily contends that the record does not support a finding that his monthly income was approximately $18,353, and that more accurate information was needed before temporary spousal support could be properly awarded. Extensive lodged

10

documents were provided by both sides with respect to the income and expenses of Stuart's personal businesses from 2009 through 2012. His monthly income from all sources that he controlled had averaged out to at least $20,000 per month. Stuart supplied his 2011 tax returns showing personal wages of $48,000 and Allegiance's total income of $220,235.

In Marcy's income and expense declaration, she represented that she worked 20 hours a week for payment of a gross amount of $1,587.60. Her expenses averaged $4,697 per month.

In issuing its ruling, the court chastised counsel for failing to produce more exact financial information in a more timely manner, and due to the length of time that the matter had been pending, it used the available information to set a temporary guideline spousal support award at $6,533 a month, retroactive to April 2012. Based on the money shown to be available to Stuart in his business bank accounts over a period of 2009 to 2012, as well as his personal and business tax returns, the monthly income figure arrived at by the judge is in the right ballpark. The court had continued the matter a number of times and had been presented with evidence to support the guidelines calculation and corresponding award of $6,533 temporary monthly spousal support. The court noted that other reserved issues would be resolved in the upcoming September 2013 two-day trial.

As the appellant, Stuart has failed to carry his burden of showing that error or a prejudicial abuse of discretion occurred. (*Maria P. v. Riles*, *supra*, 43 Cal.3d 1281, 1291.) He has made only cursory arguments and has not provided a clear picture of the entire record. We are justified in treating Stuart's support contentions as waived or at the

11

very least, unmeritorious and unsupported.  (*In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th 814, 830.)

Moreover, the circumstances in the record support the court's related discretionary determination to deny a further continuance, since the matter had been going on for more than a year and a half, both sides had supplied the required papers in an untimely manner, and Stuart's filings were made later than Marcy's filings.  The court was likewise justified in denying the motion to compel Marcy's deposition, since Stuart could not show that any realistic efforts to accommodate the situation had been made since she retained her current attorney.  In any case, extensive showings about relevant financial information had been brought forward by each side by the time of the hearing, and the court could reasonably determine that sufficient evidence was available to decide the issues presented.  (See *Oliveros, supra*, 120 Cal.App.4th at p. 1396.)  These orders are supported by the record as being well within the bounds of reason.

IV

*ATTORNEY DISQUALIFICATION MOTION*

A.  Criteria

Disqualification motions involve a conflict between clients' rights to counsel of their choice and the need to maintain ethical standards of professional responsibility. "The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar."  (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705 (*Jessen*).)  This concept is sometimes broadly stated as prohibiting an attorney or law firm from doing " 'anything which will injuriously

12

affect his former client.' " (*People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155.)  The relevant policy is the preservation of client confidentiality.  (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 (*Flatt*).)

Where a former client seeks to have a previous attorney disqualified from serving as counsel to a successor client in litigation that is adverse to the interests of the original client, "the governing test requires that the client demonstrate a '*substantial relationship'* between the subjects of the antecedent and current representations."  (*Flatt, supra*, 9 Cal.4th at p. 282, original italics; *People v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146.)  Thus, "A former client may disqualify a former attorney from representing an adverse party by showing the attorney presumably possesses confidential information adverse to the former client.  Such a presumption arises if the former client can establish a 'substantial relationship' between the prior and current representations.  A 'substantial relationship' is shown by the factual and legal similarities in the two representations and the extent of the attorney's involvement with the cases."  (*Fox Searchlight Pictures, Inc. v. Paladino*, *supra*, 89 Cal.App.4th 294, 300; fns. omitted.)

As explained in *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445 (*Ahmanson*), the resolution of successive disqualification issues goes beyond discerning the ordinary meaning of the words "substantial" and "relationship," to an examination of "the practical consequences of the attorney's representation of the former client.  The courts ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation."  (*Id.* at p. 1454.)  The courts look to

13

" 'the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy.' " (*Id.* at p. 1455.)

In *Ahmanson, supra*, 229 Cal.App.3d at page 1457, the court observed " 'there is reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery for a limited and specific purpose relating solely to legal questions.' " (*Id.* at p. 1457.) The substantial relationship test is only " 'intended to protect the confidences of former clients when an attorney has been in a position to learn them.' " (*Id.* at p. 1455.)

### B. Application of Rules: No Substantial Relationship

We examine the nature of the relationship between the former representation and the current representation, as well as the nature of the attorney's past relationship with the former client. (*Farris v. Fireman's Fund. Ins. Co.* (2004) 119 Cal.App.4th 671, 679-680, citing *Ahmanson, supra,* 229 Cal.App.3d at p. 1453.) Using this practical approach, we cannot find on this record that the trial court erred or abused its discretion in refusing Stuart's request to disqualify Attorney Salmonsen from representation of Marcy. There was apparently little or no similarity between the discrete legal problem involved in the former federal representation and the issues involved in the current case. (*Jessen, supra,* 111 Cal.App.4th at pp. 709, 711-714.) The 1999 copyright question in the prior relationship was not shown to be substantially the same as the broader issues about the parties' assets as raised in these dissolution proceedings. (*Flatt, supra*, 9 Cal.4th at pp. 282-285; *Ahmanson, supra,* at p. 1455.)

14

"[T]o apply the remedy of disqualification 'when there is no realistic chance that confidences were disclosed would go far beyond the purpose' of the substantial relationship test." (*Ahmanson, supra,* 229 Cal.App.3d at p. 1455.) Stuart did not show on appeal that he participated in disclosing any confidential information to Attorney Salmonsen that could be material to the present dissolution litigation, or that the extent of the community business assets came into play during the prior case. (See *ibid.*) Rather, he admits he previously left business matters to Marcy and John. (See *City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 327-328.)

In any event, Stuart has not shown that Attorney Salmonsen's "former and current employment are on opposite sides of the very same matter," or that the same work or strategies are again involved. (*City National Bank v. Adams, supra,* 96 Cal.App.4th 315, 328; Cal. Rules Prof. Conduct, rule 3-310; *Ahmanson, supra,* 229 Cal.App.3d at pp. 1453-1455.) This record does not demonstrate that the trial court abused its discretion in denying the motion to disqualify Attorney Salmonsen. (See *Flatt, supra,* 9 Cal.4th at p. 284; *People v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th 1135, 20 Cal.4th 1135, 1143-1147.)

DISPOSITION

Affirmed.  Each party to bear its own costs on appeal.


                                                                    HUFFMAN, J.

WE CONCUR:


        McCONNELL, P. J.


            NARES, J.


16